IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL THOMAS PHIFER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SEVENSON ENVIRONMENTAL ) <br> SERVICES, INC., ) <br> ) <br> Defendant. ) <br> ) | C.A. No. 11-169 (GMS) |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Samuel Thomas Phifer ("Phifer"), filed a Complaint (D.I. 2) against Sevenson Environmental Services, Inc., ("Sevenson") on February 28, 2011.[1] (*Id.*) Phifer appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4.) In his Complaint, Phifer alleges claims for unpaid wages, race discrimination, and retaliation. (D.I. 2.) On August 28, 2012, Sevenson served an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 in the amount of $12,686.94. (D.I. 68-4.) On June 24, 2013, Phifer filed a Motion for Summary Judgment asserting that no genuine issue of material fact remained as to his wage claim and his Title VII claims for discrimination and retaliation. (D.I. 53.) On October 2, 2013, Sevenson filed a Motion for Summary Judgment (D.I. 68), asserting that Phifer's wage claim is barred by the statute of limitations and is moot due to his refusal to accept the offer of judgment. (D.I. 69 at 13-14.) Further, Sevenson asserts that Phifer's race

---

[1] By Memorandum and Order dated March 14, 2012 (D.I. 28), the court dismissed portions of Phifer's Complaint, including claims against Delaware Solid Waste Authority, claims made under the Delaware Discrimination in Employment Act, claims of conspiracy under § 1985, claims of breach of contract, and any third party beneficiary claim.

1

discrimination and retaliation claims are unsupported by the evidence. (*Id.* at 15-20.) Presently before the court are both parties' Motions for Summary Judgment. For the reasons that follow, the court will grant Sevenson's Motion for Summary Judgment and dismiss Phifer's Motion for Summary Judgment as moot.

## II. BACKGROUND

The following facts are taken from Phifer's Complaint, and, where indicated, relevant exhibits and witness declarations. (D.I. 2; D.I. 68-1; D.I. 68-2; D.I. 69.) Phifer was hired by Sevenson on October 23, 2006, as an operator at the Cherry Island Landfill construction project in Wilmington, Delaware, at the Sevenson operator rate of $24.96 hourly. (D.I. 68-1 at ¶ 6.) On April 16, 2007, all Sevenson operators at the Cherry Island Landfill construction project, including Phifer, received a pay increase to $28.11 hourly. (*Id.* at ¶ 7.) Phifer received this pay until a seasonal lay-off on October 21, 2007. (*Id.*) Phifer was recalled from the seasonal lay-off on March 24, 2008, as a laborer at the laborer rate of pay of $19.88. (*Id.* at ¶ 8.) Phifer was again seasonally laid-off as a laborer on November 20, 2008, along with other co-workers on the project.[2] (*Id.* at ¶ 9.) Phifer was recalled from seasonal lay-off on December 1, 2008, as a laborer at the laborer rate of pay. (*Id.* at ¶ 10.) Phifer was once more laid-off as a laborer on December 19, 2008. (*Id.* at ¶ 11.) Phifer's last day of work for Sevenson was December 19, 2008. (*Id.* at ¶ 12.) Phifer was contacted by Sevenson on March 11, 2009, and offered work as a laborer at the laborer rate of pay. (D.I. 68-2 at ¶ 20.) Phifer refused the offer to return to the Sevenson project site as a laborer. (*Id.*)

Phifer argues that his rehire as a laborer was the result of race discrimination. (D.I. 2 at 2.) Phifer asserts that Sevenson refused his reemployment unless he accepted a decrease in pay to

---

[2] Sevenson is a hazardous waste clean-up contractor. (D.I. 68-2 at ¶ 2.) Sevenson's work is project-based and seasonal in nature and, as a result, seasonal lay-offs and rehires occur at various intervals throughout the year. (*Id.*)

2

$19.98 per hour. (*Id.*) Phifer alleges that white employees were instead hired as operators at the rate of $28.11 per hour. (*Id.*) Phifer alleges a claim for unpaid wages under the Delaware Wage Payment and Collection Act. (*Id.* at 5.) Phifer also claims that but for racial discrimination by Sevenson the work he performed after his rehire would have been classified as "heavy equipment" operation and, therefore, qualified at the hourly rate of $28.11. (*Id.* at 9.) Phifer filed claims with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC").[3]

Sevenson maintains that Phifer's rehire as a laborer was the result of poor performance in the position of operator. (D.I. 69.) Sevenson provides a declaration by Steven Coye ("Coye"), Project Superintendent, stating that between October, 2006 and October, 2007, he observed Phifer on the job in his position as a bull dozer operator. (D.I. 68-2.) Coye avers that he assessed Phifer's job performance and determined that he was not qualified for re-employment as an operator based on his level of skill in performing finish grade work while operating a bull dozer. (D.I. 69 at 16; D.I. 68-2 at 2.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if

---

[3] As previously determined by the court, to the extent that the plaintiff intended to bring a claim under the State of Delaware's Discrimination in Employment Act, the claim is time-barred as not filed within ninety days of receipt of the right to sue notice. (D.I. 47.)

3

it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material facts exists, the district court must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* The party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). As such, a nonmoving party must support their assertion that a material fact is in dispute by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Sevenson asserts that Phifer cannot establish his Title VII claim because he has produced no evidence to establish race discrimination in the decision to re-hire him as a laborer. (D.I. 69 at 15.) Sevenson argues that Phifer has not established a *prima facie* case of discrimination or retaliation and that even if such allegations were established, Phifer has not offered evidence of pretext for discrimination or retaliation. (*Id.* at 18.) Sevenson further contends that Phifer's wage claim is barred by the applicable statute of limitations or, alternatively, as moot due to his refusal to accept an offer of judgment in the full amount under Federal Rule of Civil Procedure 68.[4] (*Id.* at 13-15.)

### A. Phifer Has Not Established a *Prima Facie* Case of Race Discrimination

A plaintiff's discrimination and retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). To establish a *prima facie* case of discrimination claim, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment decision; and (4) this decision occurred under circumstances giving rise to an inference of discriminatory action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). While the *prima facie* test is flexible and must be tailored to fit the specific context in which it is applied, the main focus "is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Id.* at 797-98 (citation omitted). If the plaintiff meets this burden, the burden then shifts to the defendant to articulate one or more legitimate, nondiscriminatory reasons for its

---

[4] The court considers the procedural arguments set forth by Sevenson related to Phifer's wage claim. However, based on the following discussion of Phifer's underlying substantive claims the court finds it unnecessary to address the procedural defects of Phifer's wage claim.

actions. *McDonnell Douglas*, 411 U.S. at 802. If this burden is met, the plaintiff is then required to demonstrate by a preponderance of the evidence that the defendant's asserted rationale is pretextual. *Id.* at 804. If the plaintiff cannot carry this burden, the defendant is entitled to summary judgment. *Id.* at 807. It is undisputed that Phifer is a member of a protected class, as he is African-American. Sevenson does not dispute that Phifer was originally hired as an operator by Steven Coye, Project Superintendent, on October 23, 2006. (D.I. 68-2 at ¶ 3.) For purposes of Phifer's *prima facie* case, the court concludes that Phifer has established that he was a qualified employee at the time of hire.[5] Additionally, Phifer's decrease in pay associated to his rehire as a laborer serves as sufficient evidence of an adverse employment action.

In order to establish a *prima facie* case, Phifer must put forth sufficient evidence for a jury to reasonably conclude that Sevenson's decision occurred under circumstances giving rise to an inference of discriminatory action. One way to meet the fourth element of a *prima facie* case is to show "that the employer has treated more favorably similarly situated persons not within the protected class." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999). Phifer alleges that, "Sevenson had subjected him to disparate treatment with regard to his wages compared to his similarly situated white co-workers ...." (D.I. 71 at 5.) In support of this assertion, Phifer alleges that a white employee, John Tippitt ("Tippitt"), was paid at the operator rate of pay at $28.11 per hour for "operating the CAT Roller and other heavy equipment." (*Id.*) Phifer attached a 2008 pay stub showing Tippitt's rate of pay. (D.I. 2 at 15-16.) Sevenson adduced evidence that "[Tippitt] demonstrated sufficient skill to qualify as a locally hired Sevenson operator and was paid accordingly, and when serving as a water truck driver, Mr. Tippitt possessed the commercial

---

[5] The court notes that Sevenson's decision to rehire Phifer as a laborer based on his poor performance is more relevant to whether legitimate business reasons existed for Sevenson's employment decision as discussed *infra* at IV.B. *See Romdhani v. Exxon Mobil Corp.*, 2011 WL 722849, at *13 (D. Del. 2011).

driver's license required, and was paid the water truck driver rate." (D.I. 68-2 at ¶ 24.) In light of the evidence presented to the court, it is clear that Phifer has not met his burden to state a prima facie case.

### B. Sevenson Proffered a Legitimate, Nondiscriminatory Reason for Rehiring Phifer as a Laborer and Phifer Has Not Demonstrated That Sevenson's Rationale for Rehiring Him as a Laborer was Pretextual

Assuming that Phifer could establish a *prima facie* case of discrimination, the burden would then shift to Sevenson to articulate one or more legitimate, nondiscriminatory reasons for its actions. *Shahin v. Delaware*, C.A. No. 07-644-GMS, 2010 WL 4975653, at *4 (D. Del. 2010). Phifer bears the ultimate burden of demonstrating that the defendant's proffered reasons for his demotion were pretextual. To do so, Phifer must point "to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *Daughtry v. Family Dollar Stores, Inc.*, C.A. No. 08-963-SLR, 2011 WL 4943927, at *8-9 (D. Del. 2011).

Sevenson maintains that Phifer's rehire as a laborer was based on his lack of skill and not as a result of racial discrimination. (D.I. 69 at 18.) Sevenson asserts that Phifer was rehired as a laborer based on Coye's performance review of Phifer's ability to perform fine grade work on a bull dozer. (*Id.* at 4.) Coye stated that he was contacted by Phifer over the winter of 2007 requesting re-employment in the spring of 2008. (*Id.* at 3.) Coye "advised Mr. Phifer that he did not possess the skills expected of a Sevenson operator, that there was no operator work planned for 2008 suitable for his skill level, and that the only possible position available to him in 2008 might be laborer work at the laborer rate of pay." (*Id.*)

7

Phifer points to no evidence that would allow a reasonable fact finder to conclude that Sevenson's stated reasons for terminating him were a pretext. The evidence as a whole is insufficient to create a genuine issue of material fact regarding pretext. Even construing the evidence in the light most favorable to Phifer, he has not provided evidence from which a fact finder could either disbelieve Sevenson's articulated reason, or believe that a discriminatory reason was more likely than not the cause of the employment action.

### C. Phifer Has Failed to Establish a *Prima Facie* Case of Retaliation

Title VII Retaliation claims are examined under the same substantive framework as discrimination. In order to establish a *prima facie* case of retaliation, a plaintiff must show that: (1) the plaintiff was engaged in activity protected by Title VII; (2) the plaintiff suffered an adverse employment decision; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment decision. *Berry*, 2008 WL 906104, at *3. As such, Phifer engaged in protected activity under Title VII.

Phifer filed a discrimination charge with the DDOL and the EEOC on November 12, 2008. (D.I. 71 at 5.) This activity is protected by Title VII and satisfies the first prong of the retaliation analysis. As previously discussed, Phifer's rehire as a laborer at a lower rate of pay serves as an adverse employment decision for purposes of Title VII. It is at the final element of the prima facie case where Phifer's claim fails. This element requires Phifer to show a causal connection between his participation in protected activity and an adverse employment action. A connection may be inferred from: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; (2) an intervening pattern of antagonism following the protected conduct; or (3) the proffered evidence examined as a whole. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). The only fact suggestive of a causal connection is the timing of

his December 2008 lay-off. However, Coye's declaration states that other co-workers were affected by a November 20, 2008 layoff as a result of a seasonal lay-off. (D.I. 68-2 at ¶ 16.) Phifer points to no evidence to rebut Sevenson's proffered reason for the November 20, 2008 lay-off.

In view of the record before it, the court concludes that there is no causal connection between Phifer's participation in the protected activity and the adverse employment decision he suffered. As such, the court finds that Phifer has not presented enough evidence to enable a jury to reasonably find for him on this issue.

## V. CONCLUSION

For the reasons stated above, the court will grant Sevenson's Motion for Summary Judgment (D.I. 68). The complaint (D.I. 2) and Phifer's Motion for Summary Judgment (D.I. 53) will be dismissed as moot.

Dated: September 5, 2014

_____
UNITED STATES DISTRICT JUDGE